Vickie D. CONNERS

v.

**UNIVERSITY OF TENNESSEE PRESS and the University of Tennessee.**

**Civ. No. 3–82–480.**

United States District Court, E.D. Tennessee, N.D.

Dec. 20, 1982.

W.P. Boone Dougherty, Knoxville, Tenn., for plaintiff.

Ronald C. Leadbetter, Associate General Counsel, Curtis S. Sprouse, Staff Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

This is an action for violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Plaintiff is a twenty year old woman. She worked for defendant, the University of Tennessee Press, an operating unit of the University of Tennessee, from January 28, 1981 until August 17, 1981. Plaintiff was a clerk-typist and receptionist in an office that employed approximately twelve people. Plaintiff claims that she was forced to resign after requesting leave for a pregnancy related illness. The Court makes the following findings of fact and conclusions of law.

Initially, plaintiff was a good employee. In June and July 1981, however, plaintiff's superiors became increasingly dissatisfied with her work. Carol Orr, the Director of the University of Tennessee Press, and Sue English, plaintiff's immediate supervisor, testified regarding several criticisms. They had brought these to plaintiff's attention in July, 1981. (Ex. 13). Plaintiff's superiors became aware of typing inaccuracies and lack of care in her proofreading responsibilities. They disapproved of plaintiff's excessive use of the office phone for personal calls and her husband's frequent visits during working hours. They also desired her to have more regularity in her working hours. In a memo dated July 27, 1981, Ms. Orr reprimanded plaintiff for using the office telephone for personal toll calls. (Ex. 14). The memo stated that Ms. Orr would thereafter "consider any infraction of the 'University Work Rules,' as listed in the Personnel Procedures Manual, cause for immediate dismissal."

Plaintiff also experienced attendance problems prior to the discovery of her pregnancy on July 28, 1981. University of Tennessee policy provides one day paid sick

leave and one day annual leave for each month worked. Employees may request additional leave of absence without pay after exhausting accrued leave time. (Ex. 5). The granting of unpaid leave is discretionary with the employee's supervisors. Length of employment, quality of work, and the need for personnel to fill the vacancy are factors in request consideration. By August 1981, plaintiff had exhausted her sick and annual leave time. She had also taken several days leave without pay.

On July 28, 1981 plaintiff discovered that she was pregnant. That week she told Sue English and Carol Orr of the pregnancy. On August 3, 1981 plaintiff became ill from hyperemisis, a nausea related to her pregnancy. Her doctor advised her not to work for two weeks. Plaintiff's supervisors granted her request for a two week unpaid leave of absence. By letter dated August 6, 1981, Ms. Orr notified plaintiff that if she was unable to return to work on August 17, Ms. Orr would have to terminate plaintiff's employment.

Plaintiff returned to work on August 17 but was ill. She says she requested an additional week leave of absence, which was denied. Plaintiff states that Sue English forced her to sign a letter of resignation on that day. Ms. English testified that plaintiff asked to resign on August 17. In either event, plaintiff signed her resignation letter on August 17, 1981.

Plaintiff alleges that other employees with nonpregnancy related illnesses were granted extended leaves of absence without pay. The evidence indicates that at least two other employees, Sara Dodson and Katherine Holloway, were granted such leave. (Exs. 11, 12). Ms. Orr characterized Sara Dodson as an excellent employee. Katherine Holloway had worked for the University Press several years. Ms. Orr has also recently granted pregnancy-related leave to two other employees, Debbie Gaston and Julia Burnett. (Exs. 9, 10). Ms. Orr testified that Julia Burnett was a longtime employee with the University and that Debbie Gaston had an excellent work record.

■ The Pregnancy Discrimination Act provides that:

> Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work ...

42 U.S.C. § 2000e(k). In order to establish a prima facie case of employment discrimination under Title VII of the Civil Rights Act, plaintiff must show that she is a member of a protected group. She must also prove that although she was qualified for the benefit sought, she was denied the benefit. Lastly she must show that the benefit was provided to others with plaintiff's qualifications. *See McDonnell-Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for denial of the benefit. *See Id.* at 802, 93 S.Ct. at 1824. Plaintiff is then given the opportunity to establish that the stated reason is in fact pretext for unlawful discrimination. *Id.* at 804, 93 S.Ct. at 1825. The burden of persuasion at all times remains with the plaintiff. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The denial of a leave of absence because of temporary pregnancy complications violates Title VII when leaves are generally granted for non-pregnancy related disabilities. *See St. John v. G.W. Murphy Industries, Inc.,* 407 F.Supp. 695 (W.D.N.C.1976).

■ This has been an unusual case. The evidence in some respects is in conflict. We feel that plaintiff and her counsel are sincere in their belief that she was discriminated against unlawfully. Likewise, defendant's counsel is sincere in believing that the University did not unlawfully deny benefits or terminate plaintiff from her work. After careful consideration we must conclude that the University did not unlawfully discriminate against plaintiff because of her sex or pregnancy.

Plaintiff clearly belongs to a protected class under Title VII. She has failed to show, however, that she was qualified for the benefit sought, a leave of absence without pay. Plaintiff had exhausted paid leave benefits before her pregnancy. She knew that continued employment depended on no further infractions of University rules. She was in a precarious employment position when she requested additional leave. We find that plaintiff's supervisors were, in fact, understanding in granting two weeks leave under the employment situation as it stood on August 3, 1981. Even if plaintiff were to have made out a prima facie case of discrimination, defendants have come forward with non-pretextual reasons for refusing to grant additional leave time. Plaintiff's work record, short tenure, and past absence record, as well as the need for a permanent secretary-receptionist in the office, provide adequate explanation for their action.

It is also of significance that defendants granted pregnancy-related leave to other employees with more tenure or better work records than plaintiff. This indicates to the Court that defendants would have treated plaintiff no differently if she suffered some disability other than pregnancy and requested additional leave. We need not decide whether plaintiff requested to resign on August 17 or requested additional leave and resigned under pressure. In either event, pregnancy was not a factor in any action taken by defendants.

Accordingly, it is ORDERED that judgment enter in favor of defendants and that this case be, and the same hereby is, dismissed.

Order Accordingly.