762 F.2d 1007
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JEAN HANNAH, PLAINTIFF-APPELLEE,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, DEFENDANT-APPELLANT.
 NO. 84-1099
 United States Court of Appeals, Sixth Circuit.
 3/14/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: MERRITT and MILBURN, Circuit Judges; WEICK, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 In this diversity action brought on a theory of disparate treatment under the Elliott-Larsen Civil Rights Act, MCLA 37.2101 et seq, plaintiff Hannah alleges that defendant Norfolk and Western illegally discriminated against her on the basis of sex when it discharged her from her job as a yard clerk at the defendant's Detroit terminal. The railroad countered that its legitimate, non-discriminatory reason for the discharge was plaintiff's allegedly excessive absenteeism. Plaintiff Hannah sought to establish the pretextual nature of the defendant's claim by proving that similarly situated male employees with comparable or higher rates of absenteeism were not discharged. She also alleged that the employer discriminated unlawfully both in its choice of workers whose work attendance was reviewed and in its application of follow-up and monitoring procedures for the workers who were reviewed. At the close of the evidence the defendant's motion for a directed verdict was denied. The jury returned a verdict for the plaintiff and awarded her $100,000. We affirm.
 
 I.
 
 2
 The railroad argues on appeal that there was insufficient evidence from which the jury could have found proof of disparate treatment and that the trial judge erred in excluding evidence of an arbitration award under Fed. R. Evid. 403. As to its first argument, the railroad maintains that there were no similarly situated males who received treatment different from the plaintiff and that the trial court erred in submitting the issue to the jury. Plaintiff Hannah introduced evidence relative to male clerks and to male train and engine (T & E) workers. The railroad emphasizes that the class of workers most similar to plaintiff is that of male clerks; it argues that male clerks were targeted for review and disciplined just as vigorously as were female clerks. As to T & E workers, the railroad argues that as a class, T & E workers are not similarly situated to clerks and that legitimate reasons existed for not targeting that group of workers for work attendance review. The railroad contends that plaintiff introduced no evidence contradicting those reasons.
 
 
 3
 It is undisputed that plaintiff bears the burden of disproving the defendant's asserted legitimate, non-discriminatory reason for her dischage. See Clark v. Uniroyal Corp., 119 Mich. App. 820, 824-26, 327 N.W.2d 372, 374 (1982) (same burden of proof as interpreted by Supreme Court for Title VII of the Civil Rights Act of 1964, in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)). She may do this either directly or indirectly. Plaintiff can sustain the burden of proof by discrediting the employer's proferred legitimate reason; the jury may simply disbelieve the defendant's testimony. Burdine, 450 U.S. at 256.
 
 
 4
 Plaintiff may disprove the legitimacy of the asserted reason by showing that similarly situated male workers were treated differently. The key touchstone in the disparate treatment formula is 'similar.' It is not necessary for plaintiff to prove that other workers were in situations identical to hers and treated differently. She may use for purposes of comparison for a disparate teatment claim workers whose situations have salient characteristics in common with her situation. Therefore, as a clerk, plaintiff need not compare her situation only to that of male clerks. Her evidence concerning the train and engine men employed at the same terminal is relevant to her disparate treatment claim and appropriate for jury consideration, since there was testimony from which the jury could have determined that similar attendance and work availability criteria were required for at least some members of the T & E unit. (JA Vol. II at 407-08.)
 
 
 5
 Most important, the employer incorrectly focuses attention on the fact that in either class of workers, there were no males who were located at plaintiff's identical level in the progressive discipline system, and that therefore she has failed to produce sufficient evidence to support her claim. Plaintiff bears no burden in proving that she was treated differently from males in identical levels in the discipline system. The core of plaintiff's claim is that the employer has almost complete control in actually placing a worker at a certain level within the system. It is the actual determination of disciplinary situations that is at issue. The railroad makes the decisions as to when and how employees' work attendance will be monitored. In fact, it is totally within the railroad's control to generate the very information that then becomes a basis for disciplinary action. When that information is generated selectively, it is that selection process which becomes the focus of inquiry in a disparate treatment case.
 
 
 6
 The railroad does not perform uniform monitoring terminal-wide, and even within the clerical craft, which ostensibly was monitored throughout, disciplinary action was not applied or followed up on uniformly. For example, the record reflects that at least one male clerk, Mr. Benson, received at least four warnings before a formal investigation was implemented, at which time he received a deferred suspension. See JA Vol. II at 89-94. One year later, on the basis of persistent, excessive absenteeism, Benson was given an actual suspension. In contrast, after only two company warnings, a formal investigation was instituted against plaintiff in 1977, after which she was given a deferred suspension. Less than one year later, she was dismissed. She was reinstated from this dismissal in 1978 on account of a procedural failure on the railroad's part; however, in 1981 she was given an actual suspension, and in 1982 she was again dismissed. In contrast, male clerk Nash received a warning letter and a disciplinary conference in 1981, and was not subsequently monitored. A reasonable jury could well infer disparate treatment from this evidence.
 
 
 7
 In regard to the evidence concerning T & E workers, the record is undisputed that many T & E workers had absenteeism rates much higher than plaintiff's. After the initial work attendance information was generated, there was no subsequent follow-up, not even for one worker with a 90.98% absenteeism rate.
 
 
 8
 In deciding whether there was sufficient evidence to create a jury question in this diversity case, we are constrained to follow Michigan law in evaluating the sufficiency of the evidence. See Wiskotoni v. Michigan National Bank West, 716 F.2d 378 (6th Cir. 1983) (state law regarding sufficiency of evidence is applicable in diversity cases). Michigan law provides: 'Whenever a fact question exists, upon which reasonable persons may differ, the trial judge may not direct a verdict.' Caldwell v. Fox, 394 Mich. 401, 231 N.W.2d 46 (1975). Evidence in this record clearly demonstrated the existence of factual questions about which reasonable persons could differ. Moreover, there clearly exists evidence from which a reasonable jury could infer that it is more probable than not that plaintiff was discriminated against unlawfully. We hold that there was sufficient evidence both to support giving the case to the jury and to sustain the verdict.
 
 II.
 
 9
 The railroad's second argument relative to the excluded arbitration report similarly fails. The trial judge has substantial discretion under Fed. R. Evid. 403 to weigh the probative value of evidence against its potential for unfair prejudice. See, e.g., United States v. Kearny, 560 F.2d 1358, 1369 (9th Cir.), cert. denied 434 U.S. 971 (1977). The record shows that Judge Cohn carefully considered whether the Public Law Board Award, which found that the railroad's decision to discharge plaintiff did not violate the existing collective bargaining agreement, should be admitted. He held that the jury could well give undue emphasis to the document and that since there was testimonial evidence in the record concerning the arbitrator's decision, its introduction would be cumulative and unnecessary. We find no abuse of discretion in Judge Cohn's reasoning.
 
 
 10
 For the foregoing reasons, the judgment of the District Court is AFFIRMED.